ASGARALLY GANNY,

                            Plaintiff,

- against -

F.J.C. SECURITY SERVICES, INC., and 32 BJ SEIU,

                            Defendants.

MEMORANDUM AND ORDER

15-CV-1965 (JG)(JO)

APPEARANCES

    SALENGER SACK KIMMEL & BAVARO LLP
        180 Forehlich Farm Blvd.
        New York, NY 11797
    By:    Christopher J. Pogan
        *Attorneys for Plaintiff*

    FORD & HARRISON LLP
        100 Park Avenue, Suite 2500
        New York, NY 10017
    By:    Danielle Justine Moss
        Eric Su
        *Attorneys for Defendant F.J.C. Security Services, Inc.*

    SEIU LOCAL 32BJ
        25 West 18th Street
        New York, NY 10011
    By:    Andrew L. Strom
        *Attorney for Defendant 32 BJ SEIU*

JOHN GLEESON, United States District Judge:

        Plaintiff Asgarally Ganny brings this action against his employer, F.J.C. Security Services, Inc. ("FJC") and his union, Service Employees International Union, Local 32BJ ("Local 32BJ") alleging that FJC violated a 2010 settlement agreement and that Local 32BJ

breached its duty of fair representation. Both defendants, according to the complaint, breached their obligations under a collective bargaining agreement, specifically "Article IV-Non-Discrimination." Compl. ¶ 80-84, ECF No. 1-1. Ganny also asserts claims against FJC under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, and New York State's Human Rights Law ("NYSHRL").[1]

This action was filed in New York State Supreme Court, Queens County, on March 4, 2015, and removed to this Court on April 9, 2015. Defendants now separately move to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the defendants' motions are granted.

## BACKGROUND

Unless otherwise noted, all facts are drawn from the complaint and assumed to be true for the purposes of this motion.

Ganny is a black Guyanese-American who began working for FJC as a security guard in March 2008. Compl. ¶¶ 19-21, 26. He immigrated to the United States from Guyana and speaks English with a Guyanese accent. Compl. ¶¶ 19-20. Ganny alleges that both FJC and Local 32BJ discriminated against him on the basis of his race and national origin. Compl. ¶¶ 28-36. He further alleges that he suffered disparate treatment from the defendants on account of his race and national origin, including "depriving Plaintiff [of] rights he was entitled to based upon a mutually agreed upon written agreement," Compl. ¶ 51, and "making false accusations against Plaintiff for workplace infractions." Compl. ¶ 52. He endured retaliation due to his complaints of discrimination. Compl. ¶ 46.

---

[1] In his opposition, Ganny conceded any Title VII and NYSHRL claims he may have alleged against Local 32BJ. *See* Ganny Opp. ¶ 23.

Ganny's main contention appears to center on perceived violations of a settlement agreement that Ganny entered into with FJC and a different union, Allied International Union, on September 24, 2010 (the "Settlement Agreement"). In that agreement, FJC agreed to pay Ganny $2,800 and to "offer Ganny a full time position at one of FJC's HRA locations."[2] Compl., Ex. A. Ganny alleges that FJC violated the Settlement Agreement by assigning him to work at non-HRA locations, and that Local 32BJ violated its duty of fair representation by refusing to act on his claim that FJC violated the Settlement Agreement when it assigned him to a non-HRA site. Compl. ¶¶ 71-82.

On February 11, 2013, Ganny filed a charge with the National Labor Relations Board ("NLRB") alleging that Local 32BJ failed to enforce his 2010 agreement with FJC.[3] Declaration of Andrew Strom ("Strom Decl."), Ex. A, ECF No. 17. The NLRB investigated Ganny's claims and rejected them as barred by the applicable six-month statute of limitations on March 28, 2013. *Id.*, Ex. B.[4] The complaint states that on November 21, 2014, Ganny filed charges against FJC and Local 32BJ with the Equal Employment Opportunity Commission ("EEOC"). Compl. ¶¶ 22-23. On December 17, 2014, the EEOC dismissed these claims and issued a right-to-sue notice. Compl. ¶ 24.

Ganny filed his complaint in this action on March 4, 2015.

DISCUSSION

A.  *The Legal Standards*

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must allege

---

[2] "HRA" refers to the City of New York Human Resources Administration. *See* Compl. ¶ 72.
[3] Since I am permitted to do so, I take judicial notice of Ganny's NLRB charge and may consider it in ruling on a Rule 12(b)(6) motion. *See Kavowras v. The New York Times Co.*, 328 F.3d 50, 57 (2d Cir. 2003).
[4] FJC also submitted evidence that on July 25, 2011, Ganny reviewed and signed FJC's notice of reassignment to a non-HRA position at the City of New York Department of Environmental Protection ("DEP"). Declaration of Eric Su ("Su Decl."), Ex. C, ECF No. 20-5. However, I cannot rely on this extrinsic document since it is neither referenced nor incorporated into the complaint, and Ganny does not heavily rely on its terms and effects. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

sufficient facts to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 173 (2d Cir. 2012). In making this determination, a court should assume the truth of all well-pleaded allegations in the complaint "and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This rule does not require a plaintiff to provide "detailed factual allegations" in support of his claims in order to survive a motion to dismiss, *Twombly*, 550 U.S. at 555, but it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (2009). Indeed, mere conclusory allegations or "naked assertion[s]" will not survive dismissal without at least some "further factual enhancement" providing substance to the claims alleged. *Twombly*, 550 U.S. at 557.

In deciding a motion to dismiss, a court considers "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken . . . ." *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers*, 282 F.3d at 152-53 (internal citations and quotations omitted).

B.  *Claims of Breach of the Settlement Agreement, Breach of Duty of Fair Representation and Breach of the CBA*

    1.  *The Statute of Limitations*

Defendants argue that the claims for breach of the Settlement Agreement, duty of fair representation, and breach of the CBA are time-barred by the six-month statute of limitations under Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C.A. §

4

185. At various points in the 87-paragraph complaint, Ganny alleges that (1) FJC violated the Settlement Agreement that arose out of a prior grievance proceeding; (2) in so doing, FJC violated the CBA it entered into with Local 32BJ; (3) Local 32BJ violated its duty of fair representation when it unreasonably declined to pursue this claim against FJC on Ganny's behalf; and (4) in so doing, Local 32BJ violated the same CBA. Such "hybrid" claims against an employer and a union fall under Section 301 of the LMRA, and are governed by a six-month statute of limitations pursuant to Section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 155 (1983).[5] "The six-month limitations period applies regardless of whether the employee sues the union, the employer, or both." *See Holcombe v. U.S. Airways Group, Inc.*, 976 F. Supp. 2d 326, 336 (E.D.N.Y. 2013).

The claimed breach of the Settlement Agreement comprises part of the hybrid claim because it cannot be "resolved without interpreting the [collective bargaining] agreement itself." *Lingle*, 486 U.S. at 409-10. A ruling that FJC breached the Settlement Agreement would require interpreting the terms of the CBA's grievance procedures and the parties' compliance therewith. *See* Supplemental Declaration of Andrew L. Strom ("Strom Supp. Decl."), Ex. A ¶¶ 26.1-26.13;[6] *McKee v. Transco Prods., Inc.*, 874 F.2d 83, 85-86 (2d Cir. 1989). Furthermore, Ganny does not dispute that this is the applicable statute of limitations. *See* Ganny Opp. Br. ¶ 8 (arguing that Local 32BJ's breaches "all occurred within the applicable six month statute of

---

[5] Section 301 of the LMRA confers subject matter jurisdiction over suits alleging violations of a CBA. *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403-06 (1988). Congress enacted this statute to ensure that uniform federal labor law would prevail over inconsistent, state-specific rules. *See Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 209-10 (1985) (citing *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103 (1962)). Following that directive, courts must resolve disputes over the meaning to be given a contract term and the consequences of a breach of contract according to uniform federal law. *Allis–Chalmers Corp.*, 471 U.S. at 210-11.

[6] In his opposition papers, Ganny included a CBA that appears to apply to a different group of workers (those employees assigned to sites operated by the Port Authority of New York and New Jersey), which expired on March 1, 2011. *See* Ganny Opp. Br., Ex. D. SEIU has submitted what it claims is the applicable CBA. *See* Strom Supp. Decl., Ex. A. Since both CBAs contain detailed grievance procedures, I need not decide which CBA is relevant since either one would invoke the six-month limitations period that attends hybrid claims. *See* Ganny Opp. Br., Ex. D ¶¶ 15.1-15.11; Strom Supp. Decl., Ex. A ¶¶ 26.1-26.13.

limitations"). As such, I conclude that the six-month statute of limitations applies to Ganny's claim that FJC breached the Settlement Agreement, as well as his duty of fair representation and CBA claims.

2.  *Analysis*

Having determined that the six-month limitations period applies, I must now decide whether it bars the aforementioned claims. The statute of limitations accrues "when the plaintiff knew or reasonably should have known that a breach occurred." *Strassberg v. New York Hotel & Motel Trades Council*, 31 F. App'x 15, 17 (2d Cir. 2002); *Buttry v. General Signal Corp.*, 68 F.3d 1488, 1492 (2d Cir. 1995) (limitations period "begins to run when a plaintiff knows or reasonably should know that the union has breached its duty of fair representation").

Ganny filed a charge with the NLRB on February 11, 2013 alleging that Local 32BJ failed to enforce the Settlement Agreement with FJC. *See* Strom Decl., Ex. A. Filing an NLRB charge alleging the same offending conduct is sufficient to establish that a plaintiff had actual knowledge of the alleged breach at that time. *See Kavowras*, 328 F.3d at 55; *Ode v. Terence Cardinal Cooke (HCC)*, No. 08-CIV-1528 (SHS), 2008 WL 5262421, at *2 (S.D.N.Y. Dec. 12, 2008). Thus, I conclude the statute of limitations period began to run, at the latest, on February 11, 2013.

Ganny does not dispute that he filed the NLRB charge, but argues instead that on September 9, 2014, he was assigned to work at a non-HRA worksite, namely the New York City "DEP 5" site located in Bronx, New York. Ganny Opp. Br. ¶ 5. According to Ganny, the reassignment constituted a violation of the Settlement Agreement on a date that falls within the six-month limitations period. Thus, the argument goes, even if I determine that the pre-

6

September 2014 violations are time-barred, I should nonetheless allow the claims to go through based one violation taking place within six months of the lawsuit's initiation.

The first problem with this line of argument is that none of the September 2014 facts are alleged in the complaint, but rather are asserted in Ganny's opposition papers. In adjudicating a motion to dismiss, I am permitted to consider "documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). Where a document is not incorporated by reference, I may nevertheless "consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).

But where facts are neither incorporated in nor integral to the complaint, I must disregard them. *See, e.g.*, *Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) ("In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."). The facts asserted in Ganny's opposition brief regarding the September 9, 2014 reassignment and subsequent interactions with a Local 32BJ representative fall into this category, and as a result are beyond my consideration at this stage. *See Friedl v. City of New York*, 210 F.3d 79, 84 (2d Cir. 2000) ("[A] district court errs when it . . . relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss.") (citations and quotation marks omitted); *Engler v. Cendant Corp.*, 434 F. Supp. 2d 119, 127 (E.D.N.Y. 2006) ("The Court cannot consider the admissions or statements in the parties'

memorandum of law as factual allegations . . . ."); *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 414 n.52 (S.D.N.Y. 2009) (rejecting "declaration and an affidavit containing additional details about [counterclaim defendant's] alleged conduct" that was submitted with an opposition memorandum because such documents were "not properly before the court on a motion to dismiss").[7]

Moreover, even if I were to assume the truth of these extrinsic facts, they would not permit Ganny to evade the statute of limitations' reach. In a hybrid claim under the LMRA, it "is the actual or imputed knowledge of the Union's breach, rather than the employer's violation, of the Collective Bargaining Agreement that starts the limitation period running." *Flanigan v. Int'l Bhd. of Teamsters, Truck Drivers Local No. 671*, 942 F.2d 824, 829 (2d Cir. 1991). Once a plaintiff learns of the union's alleged breach, "the union's subsequent failure to actually represent the plaintiff[] cannot be treated as a continuing violation that precludes the running of the limitations period." *Buttry*, 68 F.3d at 1492.

In *Flanigan*, several workers claimed that their seniority gave them the right to "bump" less senior workers under the CBA. *See* 942 F.2d at 827. The Second Circuit found that their duty of fair representation claim was time-barred because the workers had learned that their union interpreted the CBA "to preclude the bumping by seniority that appellants claimed as their right" more than six months prior to filing the complaint. *Id.* In reaching this conclusion, the Second Circuit held that any subsequent failure to act by the union "cannot be treated as a continuing violation that precluded the running of the limitation period." *Id.*; *see also Buttry*, 68 F.3d at 1492-93 (limitation period commenced when union announced that it did not believe plaintiff had right to transfer and would not press such rights).

---

[7] That Ganny's opposition brief takes the form of an affirmation by Ganny's counsel does not alter the fact that I may not consider its new factual allegations.

By the same token, Ganny knew as early as February 11, 2013, when he filed his NLRB charge, that Local 32BJ would not represent his grievance that the assignment to a non-HRA location violated the Settlement Agreement. The statute of limitations began to run at that point and Local 32BJ's refusal to take up the same grievance in September 2014 would not toll or otherwise preclude its running.

2. *Equitable Estoppel*

Ganny advances the alternative argument that the defendants should be equitably estopped from raising a statute of limitations defense. I am unpersuaded by this argument. "To invoke equitable estoppel, a plaintiff must show that: (1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to his detriment." *Buttry*, 68 F.3d at 1493. All of the alleged misrepresentations that are detailed in Ganny's opposition brief occurred on or after September 9, 2014, which, as previously discussed, is well after the limitations period had expired. *See* Ganny's Opp. Br. ¶¶ 6-9. Therefore, Ganny could not have reasonably relied on these alleged misrepresentations "to his detriment," nor could these alleged misrepresentations excuse his failure to file suit within six months of February 2013. *See Buttry*, 68 F.3d at 1493.

C. *Title VII and New York State Human Rights Law Claims Against FJC*

1. *Pleading Standards*

Claims under Title VII and the NYSHRL are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See McGill v. Univ. of Rochester*, 600 F. App'x 789, 790 (2d Cir. 2015). Retaliation and employment discrimination claims are also subjected to the *McDonnell Douglas* analysis. *See Goins v. Bridgeport Hosp.*, 555 F. App'x 70, 73 (2d Cir. 2014). Under that framework, "a plaintiff bears

9

the initial burden of establishing a prima facie case of discrimination." *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008). If the plaintiff is able to satisfy this initial burden, the burden then shifts to the defendant to "articulate a legitimate, clear, specific and non-discriminatory reason" for its action. *Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 129 (2d Cir. 1996). Because NYSHRL claims are subject to the same standard as Title VII claims, I will consider them together, except where otherwise noted. *See McGill*, 600 F. App'x at 790.

To establish a prima facie case for employment discrimination, "a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to [an] inference of discrimination." *Dupree v. UHAB-Sterling St. Hous. Dev. Fund Corp.*, No. 10-CV-1894 (JG)(JO), 2012 WL 3288234, at *4 (E.D.N.Y. Aug. 10, 2012) (quoting *Ruiz v. County of Rockland*, 609 F.3d 486, 491-92 (2d Cir. 2010)). The standard for a prima facie case of retaliation is similar; Ganny must show "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (internal quotations omitted). I will consider Ganny's discrimination and retaliation claims together in this discussion because I find they fail to survive a motion to dismiss for the same reasons.

It bears noting that at this stage of the case Ganny is not required to allege specific facts establishing a prima facie case of discrimination under the *McDonnell Douglas* framework. *Gonzalez v. Carestream Health, Inc.*, 520 F. App'x 8, 9-10 (2d Cir. 2013). I consider "only whether a plaintiff has pled a prima facie case, not whether a plaintiff has established that case." *Fanelli v. New York*, 51 F. Supp. 3d 219, 231 (E.D.N.Y. 2014) (internal quotations omitted).

However, the *McDonnell Douglas* elements can nonetheless "provide a helpful outline of what is necessary to render a plaintiff's claims for relief plausible." *Id.* (internal quotations and citation omitted).

To state a claim for hostile work environment under Title VII, "a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive, that is, the conduct creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of plaintiff's . . . characteristic protected by Title VII." *Jackson v. NYS Dept. of Labor*, No. 09-CV-6608 (KBF), 2012 WL 843631, at *3 (S.D.N.Y. Mar. 12, 2012) (quoting *La Grande v. DeCrescente Distrib. Co.*, 370 Fed. App'x 206, 209 (2d Cir. 2010) (summary order)).

2. *Analysis*

With respect to the NYSHRL and Title VII claims,[8] the complaint consists of threadbare allegations that track the required legal elements. It lacks any specific allegations of discrimination, retaliation or hostile work environment on the part of FJC. The only adverse employment action that is alleged in any detail is Ganny's assignment to a non-HRA worksite on some unspecified date in violation of the Settlement Agreement. Compl. ¶¶ 70-74. The complaint states in conclusory fashion that this occurred due to his race and national origin, and that "similarly situated co-workers were not subjected to breach of similar agreements." Compl. ¶¶ 76-77.

However, without more, these barebones allegations do not plausibly state "circumstances giving rise to [an] inference of discrimination," *Dupree*, 2012 WL 3288234, at

---

[8] The Title VII and New York Human Rights Law claims are independent of the "hybrid" claim and, thus, are not subject to its six-month statute of limitations. *See, e.g.*, *Carrion v. Local 32B-32J Serv. Employees Int'l Union, AFL-CIO*, No. 03 CIV. 1896 (THK), 2005 WL 659321, at *18 (S.D.N.Y. Mar. 21, 2005).

*4, nor do they establish "a causal connection between the protected activity and the adverse employment action." *Hicks*, 593 F.3d at 164. Absent are any facts regarding the date(s) Ganny was assigned to non-HRA site(s) by FJC; the means, method and basis as to how FJC retaliated against him; or the nature of alleged favorable treatment(s) received by similarly situated non-black employees. Apart from FJC's failure to abide by the Settlement Agreement, Ganny claims, without further elaboration, that he suffered "false accusations [regarding] workplace infractions," "unsubstantiated reprimands," "abusive and derogatory comments," and that there was "favorable treatment of white co-workers" Compl. ¶¶ 52, 54, 56-57.[9] Again, with no detail as to the when, where, and how of these charges, I cannot determine that they state a plausible claim to relief.[10]

With respect to the hostile work environment claim, Ganny has not plausibly pled any of the required elements against FJC. The complaint does not allege conduct that was "objectively severe or pervasive," such that it created an environment that a reasonable person would find hostile or abusive. *Jackson*, 2012 WL 843631, at *3. Nor does it state that such an environment was created because of Ganny's race or national origin. *Id.*

In light of the fact that I am dismissing on the basis that Ganny has failed to state cognizable Title VII and NYSHLR claims, I need not address defendants' remaining arguments for dismissal.

---

[9] The complaint alleges that one co-worker, John Khelish, was favorably treated, *see* Compl. ¶ 55, but it is silent as to Khelish's race and national origin.

[10] Though Ganny's opposition brief sheds slightly more light on the essence of his dispute, as previously discussed, I am not permitted to consider those asserted facts on this motion.

## CONCLUSION

For the foregoing reasons, I grant defendants' motions to dismiss. The plaintiff has 30 days' leave to file an amended complaint with respect to his claims against F.J.C. Security Services, Inc., under Title VII of the Civil Rights Act and the New York State Human Rights Law in accordance with this Order.

So ordered.

John Gleeson, U.S.D.J.

Dated: July 28, 2015
      Brooklyn, New York